# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | | |
|---|---|---|
| Lois H. McCarty, Individually and as Personal Representative of the Estate of Robert L. McCarty, deceased, | ) ) ) ) | Civil Action No.: 3:16-cv-04023-CMC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| United States of America, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Lois L. McCarty, individually and as personal representative, files this Complaint against Defendant United States of America and alleges:

## PARTIES

1. Both Plaintiff and Robert L. McCarty, decedent, resided in Columbia, South Carolina at all times relevant to this matter.

2. Defendant United States of America is subject to suit pursuant to the Federal Tort Claims Act (28 U.S.C. § 1346) for the death of Mr. McCarty and other losses caused by the acts of employees, servants, and agents of the United States government.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1346(b)(1), this Court has jurisdiction over all of Plaintiff's claims.

4. Plaintiff fully complied with 28 U.S.C. § 2675 by submitting timely administrative claims for relief to the Department of the Army on June 10, 2016. On October 27, 2016, Plaintiff received notification that her administrative claims were formally denied.

5. Venue is proper because Plaintiff resides and Mr. McCarty resided in this judicial district, and all acts and omissions complained of in this Complaint occurred in this judicial district. 28 U.S.C. § 1402(b).

## FACTUAL ALLEGATIONS

6. On the morning of October 4, 2015, Mr. McCarty was traveling in his vehicle south on Devine Street near Gills Creek in Columbia, South Carolina.

7. At approximately 6:30 a.m., raging flood waters from Gills Creek engulfed Mr. McCarty's vehicle and submerged his vehicle.

8. As a result of these events Mr. McCarty drowned from the flood waters.

9. Defendant operates Fort Jackson, a military installation in Columbia, South Carolina.

10. Fort Jackson is also home to more than 3,600 permanently assigned soldiers and their more than 10,000 family members.

11. Fort Jackson also employs 5,200 civilians and provides on-base services for 115,000 retirees and their family member.

### Semmes Lake and Lower Legion Lake

12. Fort Jackson is the home of Semmes Lake, a 29 acre manmade lake created to provide recreational benefits to fort residents.

13. Semmes Lake feeds into Wildcat Creek which feeds into Gills Creek immediately to the south of Lake Katherine.

14. Semmes Lake is contained by the Semmes Lake Dam, an earthen dam constructed in 1940.

15. At all times relevant to this Complaint, Semmes Lake dam was the only structure holding back the massive amount of water in Semmes Lake.

16. According to the U.S. Army Corp of Engineers' National Inventory of Dams ("NID"), Semmes Lake's "Primary Purpose" is "Recreation."

17. "Recreation" is the only "purpose" for Semmes Lake identified in NID.

18. Congress created the National Recreation Lakes Study Commission (Public Law 104-133) in 1996 to enhance recreation opportunities at federal manmade lakes.

19. The Commission prepared the National Recreation Lakes Study ("Study") listing each federal manmade lake and its congressionally-designated primary purpose using terms such as "flood control," "irrigation," "fish & wildlife," "navigation," etc.

20. According to the Study, the "primary purpose" for Semmes Lake Dam is "recreation."

21. Consistent with these designations, Semmes Lake is frequently the site of recreational activities organized as part of the U.S. Army's Morale, Welfare and Recreation Program.

22. Semmes Lake borders the Fort Jackson Recreation Trail.

23. Since Semmes Lake's primary and exclusive purpose is recreation, the lake is not a flood control project and Flood Control Act immunity (i.e. 33 U.S.C. §702c) does not apply to Plaintiffs' claims.

24. Fort Jackson also contains Lower Legion Lake which is located near Fort Jackson Golf Club. Lower Legion Lake feeds into Wildcat Creek and Gills Creek further downstream.

**Semmes Lake Dam Inspection History**

25. According to NID, Semmes Lake Dam was inspected by the U.S. Army Corp of Engineers on August 23, 2013.

26. According to a January 2016 report by *The State*, the 2013 inspection documented substantial deficiencies in Semmes Lake Dam which inspectors labeled a "serious hazard."[1]

27. According to dam inspector Shaun Stanton, the "serious hazard" rating indicated that Semmes Lake Dam "could fail under normal working conditions." Id.

28. The January 2016 *The State* report also indicated:

   a. Semmes Lake Dam required attention dating back as far as 1981;

   b. Inspection reports from 1995 documented erosion and a sinkhole in Semmes Lake Dam; and

   c. Semmes Lake Dam was scheduled for additional repairs in 2006.

29. Upon information and belief, Defendant was aware of Semmes Lake Dam's history of deficiencies but failed to make repairs or otherwise ensure the dam was reasonably safe.

30. Upon information and belief, Defendant was aware of the 2013 inspection results and the dangers of maintaining Semmes Lake Dam in its seriously hazardous condition but chose not to correct the deficiencies, repair the dam, or otherwise make the dam was reasonably safe.

**October 2015 Events**

31. During the period of October 1-5, 2015, the greater Columbia area experienced heavy rainfall.

32. The Semmes Lake dam failed on October 4, 2015 at approximate 3 a.m.

---

[1] "Inspectors noted 'serious hazard' at Fort Jackson dam before it failed," Sammy Fretwell, *The State* (Jan. 9, 2016) (*available at* http://www.thestate.com/news/local/article53937070.html).

33. Also on the morning of October 4, 2015, a dike holding water in the Lower Legion Lake failed.

34. The massive amount of water released by these failures overwhelmed Wildcat Creek and flowed downstream into Gills Creek thereby causing Mr. McCarty's death.

35. Fort Jackson officials have acknowledged Semmes Lake dam was breached during the early October 2015 rain event.

36. Upon information and belief, Fort Jackson officials failed to warn Plaintiff of the water released in the aftermath of the Semmes Lake dam failure.

37. As a direct and proximate result of the failures described above, Decedent died.

## **FIRST CAUSE OF ACTION**
(Survival)

38. Plaintiff realleges and incorporates by reference the allegations set forth above.

39. Defendant, through the Department of the Army, had the exclusive responsibility and control over Semmes Lake Dam and Lower Legion Lake dike.

40. Defendant owed Plaintiff a duty to properly construct, maintain, operate, and manage dams on Fort Jackson.

41. Moreover, pursuant to the Dams and Reservoirs Safety Act, every dam owner "is responsible for maintaining the dam . . . in a safe condition throughout the life of the structure." S.C. Code Ann. § 49-11-150.

42. The Dams and Reservoirs Safety Act's purpose is to "reduce the risk of failure of dams" and to "prevent injuries to persons and damage to property." S.C. Code Ann. § 49-11-130.

43. Defendant was aware of serious deficiencies in Semmes Lake Dam since at least the 2013 inspection and utterly failed to remedy or even address the dam's serious risk of failure.

44. Despite its knowledge of serious deficiencies in Semmes Lake Dam since at least the 2013, Defendant utterly failed to warn Plaintiff of the dangers posed by the dam.

45. Upon information and belief, neither the Department of the Army nor the U.S. Corp of Engineers took any action to address the numerous concerns raised by the 2013 inspection results.

46. Defendant breached its duties to Plaintiffs in one or more of the following ways:

   a. Failing to properly inspect the dams;

   b. Failing to properly maintain the dams;

   c. Failing to repair the dams' known deficiencies in a timely manner;

   d. Failing to have policies and procedures in place governing inspection, maintenance, and repair of the dams or, if they existed, in failing to adhere to such policies and procedures;

   e. Failing to respond properly to information demonstrating the dams' weaknesses or deficiencies;

   f. Failing to timely respond to the dams' risk of failure despite actual notice; and

   g. In such other ways as will be determined during discovery in this action.

47. Defendant's acts and omissions were an intentional, conscious failure to exercise even slight care.

48. As a direct and proximate result of the acts and/or omissions of Defendant United States of America set out hereinabove, Mr. McCarty was made to suffer significant pain and suffering, mental anguish, psychological and emotional distress, loss of enjoyment of life, knowledge of impending death and ultimate death, as well as, medical expenses and burial expenses.

## SECOND CAUSE OF ACTION
(Wrongful Death)

49. Plaintiff realleges and incorporates by reference the allegations set forth above.

50. Defendant, through the Department of the Army, had the exclusive responsibility and control over Semmes Lake Dam and Lower Legion Lake dike.

51. Defendant owed Plaintiffs a duty to properly construct, maintain, operate, and manage dams on Fort Jackson.

52. Specifically, Defendant refused to take appropriate measures in response to the 2013 inspection of Semmes Lake dam indicating the dam was a "serious hazard" subject to failure under normal conditions.

53. Defendant knew or should have known the Semmes Lake dam would fail if Defendant failed to correct the deficiencies noted in the 2013 inspection and previous instances where the dam's vulnerabilities were identified.

54. Defendant breached its duties to Plaintiffs in one or more of the following ways:

   a. Failing to properly inspect the dams;

   b. Failing to properly maintain the dams;

   c. Failing to repair the dams' known deficiencies in a timely manner;

   d. Failing to have policies and procedures in place governing inspection, maintenance, and repair of the dams or, if they existed, in failing to adhere to such policies and procedures;

   e. Failing to respond properly to information demonstrating the dams' weaknesses or deficiencies;

   f. Failing to timely respond to the dams' risk of failure despite actual notice; and

   g. In such other ways as will be determined during discovery in this action.

55. Defendant's acts and/or omissions enumerated above proximately and directly caused the damages also set out above, the Plaintiff's personal representative seeks a reasonable amount of actual damages against Defendant.

## THIRD CAUSE OF ACTION
(Loss of Consortium)

56. Plaintiff adopts the allegations of paragraphs one through fifty-five and incorporates the same herein by reference as if stated verbatim.

57. That as a direct and proximate result of the acts and/or omissions of Defendant United States of America set out hereinabove, Plaintiff Lois McCarty, being the wife of Robert McCarty, suffered unnecessary grief and sorrow; loss of his love and affection; loss of his wisdom and experience; and loss of his income.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for the damages outlined above, for an award of the costs associated with this action, and for such other and further relief as this court deems just and proper.

Respectfully submitted,

s/ W. Jones Andrews, Jr.
W. Jones Andrews, Jr.  (Federal ID:  5797)
McGowan, Hood & Felder, LLC
1517 Hampton Street
Columbia, South Carolina 29201
T:  (803) 779-0100
F:  (803) 787-0750
jandrews@mcgowanhood.com

ATTORNEY FOR THE PLAINTIFF

Columbia, South Carolina
December 29, 2016